UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| SEAN McKEEVER, #601610, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07-cv-632 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| DAVE ANDERSON, et al., ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| _____) | |

This is a civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. His complaint concerns the conditions of his confinement on February 1, 2007, as a pretrial detainee housed in the Kent County Correctional Facility (KCCF). The defendants are Sergeant Dave Anderson and Sheriff Lawrence A. Stelma. Plaintiff asserts that defendants violated his rights under the Fourteenth Amendment's Due Process Clause. He alleges that defendant Stelma was deliberately indifferent to the risk of plaintiff's being assaulted on February 1, 2007, by inmate Alvin Kirkland, and that defendant Anderson was deliberately indifferent to his serious medical needs. Plaintiff seeks an award of monetary damages.

The matter is now before the court on defendants' motion for summary judgment. (docket # 55). On February 25, 2009, the court entered an order notifying plaintiff of his opportunity to submit affidavits, documents and other materials in opposition to defendants' motion on or before March 25, 2009. (2/25/09 Order, docket # 58). Plaintiff elected not to file a response to defendants' motion. For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007).

Although plaintiff elected not to file a response to defendants' motion for summary judgment, the court may not for that reason alone enter judgment against plaintiff. *See Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991); *accord Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000). Rather, the court is required to examine the movants' summary judgment motion to ensure that they have discharged their initial burden.

## **Facts**

The following facts are beyond genuine issue. Plaintiff was a pretrial detainee at the Kent County Correctional Facility in 2006 and 2007. During the period between December 26, 2006 and the second week of January 2007, plaintiff filed three kites (informal complaints). (Ex. 4, Plf. Dep. at 20, 22).[1] On December 26, 2006, he sent a kite to "sergeants" complaining that other inmates were calling him a snitch, and that he wanted to be moved to a different part of the jail. (Plf. Dep. at 19-20). A second kite was sent around December 30, 2006, to an unidentified "first shift sergeant." (*Id.* at 20). Plaintiff's remaining kite requested a grievance form and it reiterated plaintiff's desire to be moved. The response to this grievance informed plaintiff that he could not be moved to a different section of the jail because he was on suicide watch. (*Id.* at 21). Plaintiff did not file any kites after the second week of January, 2007. (*Id.* at 22).

---

[1]All the exhibits referenced herein are attached to the defendants' brief. (docket # 56).

Plaintiff testified that because he was on suicide watch, he was closely monitored. "Every time I went out to breakfast, lunch, or dinner, there was always a guard there. There is always a guard at the front watching. There is one in the observation, and then there is one always walking the floor to make sure. The day of the assault, there was a heart attack victim. And I believe they all went down there, and there was just one guard on duty. He was in observation. When we opened the door there was nobody -- no guard there who is usually always there, and that is when Alvin attacked me." (Plf. Dep at 21-22). The door from the inmate cell block is opened electronically and inmates are allowed to walk down the hall to KCCF's dayroom. (*Id.* at 29). On February 1, 2007, shortly after 1:00 p.m., plaintiff was in the process of walking to the jail's dayroom when inmate Kirkland took advantage of the fact that other guards were busy attending to a heart attack victim and rushed out of his cell and began hitting plaintiff. (*Id.* at 33). Plaintiff testified that Kirkland delivered several blows to his head and "slammed" his shoulder, resulting in two broken bones. (*Id.* at 30).

Plaintiff testified that KCCF records indicating that guards responded quickly to the incident (Ex. 2) were false. Plaintiff testified that he knew of an unidentified "guy" or "dude" that he "ha[d]n't been able to find," who would purportedly testify that he watched the "whole time" and that plaintiff had been left on the floor for 35 minutes before being found. (Plf. Dep. at 34). Plaintiff never produced testimony from this witness in response to defendants' motion for summary judgment. Plaintiff testified, "I laid on the floor unconscious for five minutes and then I laid on the floor just looking." (*Id.*). Medical records show that at 1:15 p.m., a nurse responded and found plaintiff lying on his back in his cell. (Ex. 3). Plaintiff testified that "guards came when the nurses got there." (Plf. Dep. at 35). Plaintiff believes that he was on the floor for "a long time" before

anyone found him and speculated that "[e]verybody must have been with the heart attack victim that day." (*Id.*). Upon examination, the nurse determined that plaintiff had two small lacerations on his right cheek, the area around his right eye was bruised an swollen, and plaintiff had a lump on the back of his head. Plaintiff complained of abdominal pain and pain in his right shoulder. Plaintiff's shoulder had a decreased range of motion.

Plaintiff testified that the guard who responded had "Anderson" on his name tag and three stripes on his uniform. (Plf. Dep at 32, 40).[2] Plaintiff's deposition testimony indicates that he believes that defendant Anderson should have obtained priority medical assistance for plaintiff over that given to the heart attack victim:

> Q. So basically with as far as Sergeant Anderson is concerned, the only knowledge or information that he would have about your shoulder injury is that he was right there after Mr. Kirkland attacked you, and as far as you know, he never saw you or talked to you after that?
>
> A. I would say yes.
>
> Q. You talked to nurses, you talked to the doctors at the jail, but you didn't talk to Sergeant Anderson regarding your shoulder after that?
>
> A. Yes. Anderson, he did not make it -- He wasn't in no rush for me to get medical treatment; that is for [sic] obvious. It wasn't no [sic] -- how are you going to take a heart attack victim? How do you know that heart attack victim was more worse [sic] hurt than I was? How do you know I didn't have internal bleeding in my brain? . . . . I had a big lump on the back of my head, you know. Anderson, he knew. He didn't rush to get me help[.]

(*Id.* at 40-41).

---

[2] Defendant Anderson's affidavit and KCCF records indicate that Anderson was never involved in the response to this incident. (Ex. A, Anderson Aff. ¶¶ 6-9). For present purposes, plaintiff's deposition testimony that Anderson was the sergeant who responded must be taken as true.

Plaintiff testified that he believes the records indicating that an ambulance was requested for him at about 1:20 p.m. and that it arrived at KCCF at about 1:30 p.m. are incorrect. (Plf. Dep. at 32). He does not dispute that an ambulance arrived at KCCF around 1:30 p.m., but he believes that the 1:30 p.m. ambulance was for the heart attack victim, and that a second ambulance came for him at 1:49 p.m. (Plf. Dep. at 33). Regardless of whether the ambulance that transported plaintiff to the hospital arrived at KCCF at 1:30 p.m. or nineteen minutes later, it is undisputed that the responding medical care professionals first secured plaintiff on a backboard and then transported him by gurney to the waiting ambulance. (Ex. 3). Plaintiff states that he remained in the ambulance for approximately 35 minutes before it started the trip to St. Mary's Hospital. Plaintiff testified that he arrived at St. Mary's Hospital at 2:56 p.m. (Plf. Dep. at 35). Plaintiff received treatment for his injuries and returned to KCCF around 4:30 or 5:00 p.m. (*Id.* at 37).

## Discussion

Plaintiff alleges that defendant Stelma failed to protect him from the February 1, 2007 assault by inmate Kirkland and that defendant Anderson was deliberately indifferent to his serious medical needs. As a pretrial detainee, plaintiff's constitutional rights were secured through the Fourteenth Amendment's Due Process Clause rather than directly from the Eighth Amendment's prohibition against cruel and unusual punishment. Through the Fourteenth Amendment, pretrial detainees are entitled to the same Eighth Amendment protections as convicted prisoners. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005).

1.      Claim Against Sheriff Stelma

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "'To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.'" *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Eighth Amendment proscribes deliberate indifference by prison officials to an unreasonable risk of injury to prison inmates. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). An Eighth Amendment claim contains objective and subjective components. *Cardinal v. Metrish*, 564 F.3d 794, 802 (6th Cir. 2009). First, "the deprivation alleged must be, objectively, 'sufficiently serious.' For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Woods*, 110 F.3d at 1223. Plaintiff never notified Sheriff Stelma that inmate Kirkland posed any particular risk. He admits that he was under extremely close surveillance because he was on suicide watch. Inmate Kirkland took advantage of guards' being busy with a healthcare emergency involving another inmate and attacked plaintiff suddenly and without warning. No reasonable trier of fact could find in plaintiff's favor on the objective component of his claim against defendant Stelma.

The second requirement for a claim of deliberate indifference to the risk of assault against an inmate by a fellow inmate is that the prison official have a sufficiently culpable state of mind. In *Farmer v. Brennan*, the Supreme Court held that the subjective element of a claim of deliberate indifference requires at least criminal recklessness. 511 U.S. at 839-40. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane

conditions of confinement unless the official knows and disregards and excessive risk to inmate health or safety; the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837; *see Cardinal v. Metrish*, 564 F.3d at 802; *see also Farah v. Wellington*, 295 F. App'x 743, 749 (6th Cir. 2008). "This burden is not light; even 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as punishment.'" *Shade v. City of Middleton*, 200 F. App'x 566, 569 (6th Cir. 2006)(quoting *Farmer* 511 U.S. at 838); *see Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006). The plaintiff's "burden can be met 'in the usual ways including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Smith v. Yarrow*, 78 F. App'x 529, 537 (6th Cir. 2003)(quoting *Farmer*, 511 U.S. at 842). There is no evidence supporting an inference that defendant Stelma knew that inmate Kirkland posed any threat to plaintiff. No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claim against defendant Stelma.

    2.    <u>Claim Against Sergeant Anderson</u>

Plaintiff alleges that Sergeant Anderson was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S.

at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. I find that no reasonable trier of fact could find in plaintiff's favor on either component of an Eighth Amendment claim against defendant Anderson.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). It is

undisputed that inmate Kirkland injured plaintiff. The mere presence of a serious medical condition is insufficient to establish the objective component. The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). Plaintiff falls far short of satisfying the objective component. He has not presented evidence that defendant Anderson caused an objectively serious deprivation. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286-87 (6th Cir. 2006). It is patent that plaintiff would have preferred it if he had been transported to the hospital before the inmate who had suffered a heart attack. There is no evidence that defendant Anderson was responsible for making the medical determination regarding which patient was in greater need of urgent hospital care. It is undisputed that, minutes after the assault, plaintiff was treated by a nurse. Plaintiff was found on the floor and stated that he had lost consciousness. Medical professionals made a determination that in order to avoid potential spinal injuries, it was necessary to secure plaintiff to a backboard before he could be moved. (Ex. 3). Plaintiff has not identified anything defendant Anderson could have done to speed up this process. Delays attendant to routine medical precautions taken to avoid potentially catastrophic injuries cannot satisfy the objective component of an Eighth Amendment claim.

The second prong under Estelle requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The

Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care.  Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.  The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.  Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("The subjective standard is meant to prevent the constitutionalization of medical malpractice claims . . . ."); *accord Mabry v. Antonini*, 289 F. App'x 895, 903 (6th Cir. 2008) ("'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law.'") (quoting *Westlake*, 537 F.2d 860 n.5).  Plaintiff complains that defendant Anderson did not "rush" to get him medical help, but the evidence shows that plaintiff received prompt medical attention within minutes after he was assaulted by Kirkland, was transported by ambulance to a hospital and treated, and transported back to KCCF, all occurring within the span of approximately three hours.  No reasonable trier of fact could find in plaintiff's favor on the subjective component of his Eighth Amendment claim against defendant Anderson.

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket # 55) be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.


Dated:  June 16, 2009            /s/  Joseph G. Scoville
                                 United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).